*(Circuit Court of Cook County. In Chancery.)*

## Moulton, et al.

### vs.

## Perry, et al.

1. EASEMENTS—CREATION BY PLAT. An easement may be created by a plat or subdivision duly acknowledged and recorded expressly or impliedly showing its existence.

2. SAME—EQUITABLE—SUBSEQUENT PURCHASER'S—NOTICE. An amenity in favor of each lot bordering on a private park, to compel other owners to share in the expense of ornamenting the park is in the nature of an equitable easement and is binding on a purchaser of one of the said lots, with notice.

3. REAL ESTATE—RIGHT OF OWNER—PLACING RESTRICTIONS ON LAND—PROVINCE OF EQUITY. The law recognizes the right of an owner of land to impair its usefulness or to make it tributary to another piece of land and such a servitude when created is enforcible in equity.

4. REAL ESTATE—RIGHT OF OWNER TO CREATE RESTRAINTS—LIMITATION OF RIGHT. The only limitation to the right of an owner of realty to put restraints upon the land is that such restraints shall not be contrary to public policy.

5. REAL ESTATE—BURDENS THEREON—EXPENSE OF MAINTAINING PARK. The right to have land contribute to the expense of keeping up a private park, which is also for the benefit of the land contributing is not a burden on land against public policy.

6. REAL ESTATE—CHARGE ON LAND—LIABILITY OF PURCHASER. A purchaser of land charged with its pro rata share of the expense of maintaining a park does not assume any liability for charges incurred prior to his purchase as such a liability does not pass to subsequent purchasers.

7. REAL ESTATE—LIABILITY IN NATURE OF A LIEN—WHEN NOT CREATED. A liability in the nature of a lien, to attach to the land until paid for, must be created by clear and explicit language.

8. REAL ESTATE—IMPOSING OBLIGATION ON—NECESSITY OF NOTICE TO
   OWNER. Even though a charge in the nature of a lien could
   be imposed by a majority of a meeting of owners called for
   that purpose, in the absence of notice to him, an owner who
   failed to attend could have no obligation placed on him or his
   land.

9. REAL ESTATE—CHARGE OR OBLIGATION TO CONTRIBUTE TO MAIN-
   TENANCE OF PRIVATE PARK—HOW ENFORCED. Any owner of land
   charged with the expense of contributing to the maintenance
   of a private park, once a valid assessment for that purpose has
   been made, must pay his share or he can be barred from the
   privilege of the park or his land might be sold through a pro-
   ceeding in equity.

Bill in equity. Heard before Judge Murray F. Tuley.
The facts are stated in the opinion.

TULEY, J.:—

In the year 1858 Stephen A. Douglass filed for record in
Cook county a plat or subdivision of certain land owned by
him which is known as the "Oakenwald Subdivision." In this
plat was a piece of land, a *cul de sac* about 500 feet east and
west by 250 feet north and south, fronting on Cottage Grove
avenue on the west and the Illinois Central R. R. right-of-way
on the east, and having 50-foot lots fronting the same on the
north and south sides thereof. This piece of land was desig-
nated in the plat as "Groveland Park," and the space it oc-
cupied on the plat contained these words: "This space is
dedicated as a private park by the name of 'Groveland Park,'
the title being vested in the state of Illinois in trust for the
use of the owners of lots fronting on the same, and to be used
and enjoyed by such owners in common as a private park,
and for no other purpose whatever, and to be ornamented,
regulated and protected in such manner as a majority of such
owners shall from time to time prescribe, such owner to share
in the control and expense in proportion to the number of
feet he shall own fronting or bounding on said park; and the
alleys to be deemed private alleys, subject to like condition
and use."

Through mesne conveyances the property has passed from

Douglass and his heirs into the parties to this suit, all the conveyances describing the lots as being in "Groveland Park" in said subdivision. The park, and roadways in the park to the lots fronting the same, have been improved by the owners of lots fronting on the park, and a considerable amount of money has been expended from time to time in such improvements.

A majority of the owners organized an association with a president, treasurer and other officers and levied or assessed against the lot owners an assessment running from fifty cents to $1.00 a front foot each year. The assessments made in 1875, 6, 7, 8 and 9 were not all paid, the lots of the defendants hereto being the lots for which the assessments, one or more of them, remain unpaid. Some of the defendants have acquired the title after the defaults in payments had been made. It is clear from the plat itself that there is granted by the maker of the plat an easement appurtenant to each of the lots fronting this piece of land, to use the land for *egress* and *ingress* to the lots, and for the purposes for which private parks are commonly used.

The difficult question is what easements or rights are granted to each lot owner as to the ornamentation and regulation of the park, and as to the right to compel each of the lots (or the owners thereof) to share in the expense connected therewith. The bill prays that the defendants be decreed to pay to the treasurer of the association the unpaid assessments and in default thereof that their respective lots be sold therefor; that until such payments be made the defendants be restrained the use of the park (except so far as may be necessary for *ingress* and *egress* to their lots) and for general relief. Some discussion was had in the very able arguments of counsel as to whether the fee of the park is vested in the state of Illinois by virtue of the plat being acknowledged and recorded under the statute concerning "plats."

It is in my opinion immaterial where the fee of the land is vested, as the perpetual use of the property as a private park and for access to the lots is reserved as an appurtenant to the lots fronting the same. That an easement in land may be cre-

ated by a plat or subdivision duly acknowledged and recorded, expressly or impliedly showing a right-of-way, a park or other easement, can not be doubted under the authorities cited.

It is admitted that as to the sharing the expense of the ornamentation and control of the park there is no covenant, express or implied, which runs with the land. It is claimed, however, that each lot owner has an easement or a "privilege" or "amenity" in each of the other lots as to the expenses of maintaining this park. If this right which each lot owner has to demand that each of the lot owners shall contribute to the expense of the park, can be called an easement, it is of that class known as equitable easements. It could not be enforced at law, there being neither privity of contract or of estate.

Covenants, agreements and reservations in plats as to not building within a certain number of feet of a lot line; that property shall be used for residence purposes only, or prohibiting its use for carrying on noxious or offensive trades and the like, have been held binding in equity as an easement, a privilege or amenity pertaining to one lot as to adjoining or other lots in a subdivision. But these equitable easements or servitudes, it will be noticed upon an examination of the authorities cited, are all of that character which do not constrain or require the owner of the servient estate to act. His burden consists in being restrained from doing something, as, for instance, from building upon a certain part of his land, or in being obliged to suffer something to be done upon his property by another, as to suffer a passage or right of way. It is not, however, necessary to designate this right either as an "easement," "privilege" or "amenity," the only question being, is this a right which the owner of the land had the power to confer upon the owner of each lot as against the owner of every other lot abutting this park.

By reason of the dominion which every owner has over his land, the law recognizes his right to so deal with it as to restrict or restrain its use by his grantees, to impair its usefulness, or to make it tributary to another piece of his own land by imposing a servitude, and where a purchaser of land takes

33

it with notice that his grantor or a person through whom he claims had by agreement, express or implied, impressed upon it a certain servitude or obligation, equity will enforce the servitude or obligation because it would be unconscientious to permit such purchaser to violate or disregard the valid agreements of those through whom he claims and of which he had notice. The only restraint upon the owner in creating such easements, privileges or rights is that they shall not be against public policy or in restraint of trade. See *Whitney v. Union Ry. Co.*, 11 Gray, 359. This is subject to neither disqualification nor can the right to have land contribute to the expense of keeping up this park, which is a benefit to the land charged as well as to all the other land, be deemed a capricious reservation, limitation or burden on the property, such as we find condemned by some of the courts.

Every purchaser of one of these lots fronting this park must be held to have notice of this right on the part of the other lot owners to have the lot purchased contribute towards the expense of this park, as every purchaser claims through this plat. It is a document, a link in his chain of title, and every purchaser is bound by the recitals contained in a deed or plat which forms a part of his title. He therefore cannot complain of the want of notice, as he has certainly constructive notice. He may also be said to have apparent notice from the situation and condition of the property.

What is the nature of this liability to contribute to the expense of this park? Does a purchaser assume any liability as to past charges or claims for the expense of maintaining this park, or, in other words, does he take the lot charged with its *pro rata* of past expenses? I think not. I am inclined to the opinion that equity—by analogy to the rules prevailing at law as to the liability on covenants broken, not running or passing with the land so as to make subsequent purchasers liable therefor,—must hold that this broken obligation or duty to pay its share of the expenses of the park will not follow or pass to the subsequent purchasers of any of these lots.

It is reasonable to suppose that if the distinguished maker

of this plat, who at one time was a member of the supreme court of this state, had intended this liability to be in the nature of a lien, to attach to the land until paid, he would have expressed in clear and explicit language such intention. Such a lien must appear by clear and explicit words, it will never be held to arise by inference.

I am of the opinion that the true construction and effect of the words found on the plat is this: that each lot owner has the right, as an appurtenant to his lot, to demand of every other lot owner that he contribute *pro rata* expenses of the maintenance of this park; that there was an implied agreement by every person purchasing a lot of Douglass or his heirs, by the acceptance of a deed of a lot in this subdivision, that he would pay his pro rata share of such expenses, and that a court of equity will hold every subsequent purchaser (with notice) to the performance of this agreement or obligation; also that such subsequent purchaser, has cast upon him by reason of being such owner, the obligation or duty to pay such portion of the expenses as may be incurred during the time he remains such owner.

But even if the words as to the expense of ornamenting, etc., of this park found on the plat could be held to create a lien or charge on the respective lots which could only be discharged by payment, this bill could not be maintained. There is no authority for a majority of the owners to form an association or *quasi* corporation with a president, secretary and other officers, and make the assessments or the acts of this organization binding. A majority in number and in frontage concurring may determine from time to time what improvement shall be made, how it shall be regulated, how protected; if necessary employ a park keeper, etc., but every lot owner must have prior notice of any meeting held for that purpose.

Notice is of the essence of things required to be done in order to impose a liability. It does not appear that all owners were notified as to any meeting which imposed the assessments, and failing in this, there was no liability or obligation fastened upon any lot owner who failed to attend.

I think these lot owners might enclose this park by fence and locked gates, leaving the necessary road so as to admit of access to the lots and make a valid regulation excluding from the privileges of the park any lot owner who failed to pay his share of the expenses imposed or voted at a meeting to which all lot owners had been notified, and they might force a contri- bution according to his frontage from any such lot owner by a proceeding in chancery, and upon decree obtained in default of payment sell his land. I can see no other mode of making him share the burden which his position as lot owner casts upon him.

In a case more nearly similar to this than any that I have discovered in an extensive examination of the authorities, a board of trustees was authorized by special act of parliament to control a terrace walk in which certain lot owners had privileges, and as to the expense of which they were obligated to contribute. See *Duncan v. Louch*, 14 Law J. p. 184.[1]

It is possible that some similar legislation might be had as to this private park which would remove the difficulties at- tending its present management.

The bill must be dismissed for the want of equity.

---

(*Circuit Court of Cook County. In Chancery.*

---

[1] *Duncan v. Louch*, 6 Q. B. 904, 14 L. J. Q. B. 185, 9 Jur. 346.